CRANSTON TEACHERS'
ASSOCIATION

v.

CRANSTON SCHOOL COMMITTEE.

No. 78–411–M.P.

Supreme Court of Rhode Island.

Jan. 22, 1981.

---

Natale L. Urso, Thomas J. Liguori, Jr., Westerly, for petitioner.

Vincent J. Piccirilli, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is a petition for a writ of certiorari by the petitioner Cranston Teachers' Association seeking review of a decision of the Board of Regents for Education (board) reversing a finding of the Commissioner of Education that the respondent Cranston School Committee was unlawfully soliciting registered nurses rather than certified nurse-teachers for employment in the Cranston school's health program.

The facts are not in dispute. The petitioner appealed to the Commissioner of Education a decision by respondent to solicit registered nurses who were not certified by the Department of Education for its school health program.[1] The commissioner found that respondent's action violated the unambiguous certification requirements of G.L. 1956 (1969 Reenactment) § 16–21–7 as amended by P.L. 1977, ch. 271, § 1 and § 16–21–8, as enacted by P.L. 1976, ch. 116, § 1, as amended by P.L. 1977, ch. 271, § 1. The respondent appealed to the board, which reversed the commissioner's decision.[2] As a result, petitioner filed a petition for a writ of certiorari to review the board's decision. *See Bristol School Department v.*

Board of Regents for Education, R.I., 396 A.2d 936, 937 (1979). We granted the petition and ordered issuance of the writ to consider one question: whether the Board of Regents properly construed G.L. 1956 (1969 Reenactment) §§ 16–21–7 and 16–21–8 as amended.

The current and relevant version of G.L. 1956 (1969 Reenactment) § 16–21–7, entitled "School health program," provides that "[a]ll schools that are approved for the purpose of §§ 16–9–1 and 16–9–2 shall have a school health program * * *. Said program shall include and provide, within and consistent with existing school facilities, for the administration of such nursing care by certified nurse teachers as defined in § 16–21–8 * * *." Section 16–21–8, entitled "Certified nurse-teacher," provides "[e]ach school system shall employ certified nurse-teacher personnel certified by the state department of education * * *. The school health program as defined in § 16–21–7 shall be staffed by certified personnel only."

The Commissioner of Education, in considering petitioner's complaint, found that respondent could not lawfully employ registered nurses who are not certified nurse-teachers to serve as nurses in its school health program. The board, however, reversed the commissioner on the premise that the statute required certified nurse-teachers for certain "limited purposes only" and that non-certified nurses might be employed for other nursing duties.[3] Because petitioner had not established that the nurses solicited by respondent were to be used in areas "reserved" for certified nurse-teachers, the board felt compelled to reverse the commissioner's decision.

---

1. The commissioner has jurisdiction to hear such appeals pursuant to the provisions of G.L. 1956 (1969 Reenactment) § 16–39–2.

2. The board has jurisdiction under G.L. 1956 (1969 Reenactment) § 16–39–3.

3. More specifically, the board ruled that "[c]ertified nurse-teachers are required in the care of a student when requested in writing by the

student's physician and authorized in writing by the parent or guardian of that student. In addition, should nurses be engaged in the '* * * organized direction and supervision * *' (16–21–7) of the program, they must be certified nurse-teachers. In all other areas of nursing care whether provided under the approved program or otherwise, other types of nurses may be employed."

■ In reviewing whether respondent gave proper effect to the statutes in question, we are aided by several settled principles of statutory construction which are applicable to the present dispute. Although it was within the board's province to review these statutes, this court is vested with final responsibility for statutory construction. *See Statewide Multiple Listing Service, Inc. v. Norberg*, R.I., 392 A.2d 371, 373 (1978); *Pacheco v. LaChapelle*, 91 R.I. 359, 361–62, 163 A.2d 38, 40 (1960). Furthermore, we observe that

> "[i]n construing a statute, words used are to be given their plain meaning unless a contrary intention clearly appears and, except in the case of equivocal and ambiguous language, the words of a statute cannot be interpreted or extended but must be applied literally. * * * The Legislature's meaning and intention must first be sought in the language of the statute itself, and if the language is plain and unambiguous, and expresses a single definite and sensible meaning, that meaning is conclusively presumed to be the Legislature's intended meaning and the statute must be interpreted literally."

*Podborski v. Haskell Manufacturing Co.*, 109 R.I. 1, 8, 279 A.2d 914, 918 (1971); *see North Providence School Committee v. Rhode Island State Labor Relations Board*, R.I., 408 A.2d 928, 929 (1979); *Statewide Multiple Listing Service Inc. v. Norberg*, R.I., 392 A.2d 371, 373 (1978); *Markham v. Allstate Ins. Co.*, 116 R.I. 152, 155–56, 352 A.2d 651, 653 (1976). In essence, when a statute is unambiguous, a tribunal vested with power to consider the statute should not engage in construing the statute beyond its literal meaning. *See Citizens for Preservation of Waterman Lake v. Davis*, R.I., 420 A.2d 53, 57 (1980). Finally, a literal reading of a statute should be abandoned only when such a reading would lead to an absurd result or defeat an obvious legislative purpose. *Buffi v. Ferri*, 106 R.I. 349, 353, 259 A.2d 847, 850 (1969).

■ Guided by these standards, we must give literal effect to the provisions of sections 16–21–7 and 16–21–8. Without exception only certified nurse-teachers are to be employed by the respondent; no contrary intention appears, and the language is not ambiguous. Exclusive hiring of certified nurse-teachers fulfills the legislative meaning, which is abundantly clear from a simple reading of both statutes. We remain unconvinced that giving these sections literal effect would lead to an unintended or absurd result.

The petition for certiorari is granted, the decision of the Board of Regents for Education is quashed, and the record in the case is ordered returned to the board with our decision endorsed thereon.

KELLEHER, J., did not participate.